UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOSEPH JAMES LEFEBRE,

        Plaintiff,

    v.                            Case No. 17-C-1312

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

---

## DECISION AND ORDER AFFIRMING COMMISSIONER'S DECISION

---

      Plaintiff Joseph Lefebre filed this action for judicial review of a decision by the Commissioner of Social Security denying his application for disability and disability insurance benefits (DIB) under Title II of the Social Security Act but approving his application for supplemental security income (SSI) under Title XVI of the Act. This case arises from an application originally filed in 2006, which has generated three opinions by Administrative Law Judges (ALJs), and is now before this court for the second time. Despite the case's long history and its extensive record, Plaintiff raises only a single issue before the court: whether the ALJ erred as a matter of law by failing to properly address Plaintiff's age category as presenting a borderline situation five and a half months before Plaintiff's fiftieth birthday. For the reasons set forth below, the decision of the Commissioner will be affirmed.

## BACKGROUND

      Plaintiff was born on August 27, 1959. R. 418. His left leg was amputated below the knee three weeks after a July 3, 1987 motorcycle accident prior to his twenty-eighth birthday. R. 436. He received a prosthesis, which was replaced in 1998 after becoming worn out. R. 413–14. Over the years plaintiff has worked in a variety of roles as a general laborer, including some work as a

painter and a solderer. R. 52, 61–62. By 2004, plaintiff reported experiencing pain and frequent blisters on the stump, was limping often, and had poor balance. R. 434. As a result, he filed a Title XVI application for SSI and a Title II application for DIB in June 2006, alleging that he became disabled on February 24, 2003. R. 252, 258. Those applications were denied both initially in August 2006 and on reconsideration in August 2009. R. 81–84. Plaintiff requested an administrative hearing, which ALJ Margaret G. O'Grady conducted on October 26, 2010. R. 47. Both Plaintiff, who was represented by counsel, and a vocational expert (VE) testified at the hearing. R. 48. On December 8, 2010, ALJ O'Grady issued a nine-page decision concluding that Plaintiff was not disabled. R. 76–84.

Plaintiff sought review by the Appeals Council, which vacated ALJ O'Grady's decision and remanded the matter for further consideration. R. 90–91, 187. The Appeals Council determined that the residual functional capacity (RFC) articulated by ALJ O'Grady used improperly vague language and was not applied correctly in assessing Plaintiff's capacity to work. R. 90. On remand, ALJ O'Grady held a hearing on July 19, 2013, and heard testimony from both Plaintiff, now represented by his current counsel, and a new VE. R. 29–30. ALJ O'Grady subsequently issued a second, nine-page decision on October 23, 2013, once again concluding that Plaintiff was not disabled. R. 522–30. After the Appeals Council denied Plaintiff's request for review of ALJ O'Grady's second decision, Plaintiff filed an action seeking review in this court. R. 688, 692. That action culminated in a joint motion to remand to the Commissioner for further proceedings; this court granted that motion. *Lefebre v. Colvin*, No. 15-C-9 (E.D. Wis.), ECF Nos. 20–21. In response to this court's order remanding the case, the Appeals Council vacated ALJ O'Grady's second decision,

directed that a new ALJ be assigned to the case on remand, and instructed that ALJ to reconsider the nature and severity of Plaintiff's mental impairments. R. 715–16.

ALJ Patrick Toal held an initial hearing on the remanded case on October 4, 2016. R. 639. Plaintiff testified that he had begun working part-time as an assistant manager at New Beginnings, a learning and training center where employees hang clothes, sort nuts and bolts, and complete other small jobs. R. 649. Two medical experts also testified, but the hearing could not be completed because technical problems prevented the medical experts from reviewing the complete record. R. 640–42. The hearing was continued to April 13, 2017, but no testimony was ultimately taken at that hearing after the ALJ and Plaintiff's counsel discussed the possibility of reopening a separate SSI award that Plaintiff received in 2015 and discussed access to the record documents necessary to make such an assessment. R. 618–38. Finally, on July 6, 2017, ALJ Toal conducted a third hearing, at which he heard testimony from Plaintiff, two medical experts, and a VE. R. 567. Importantly, the ALJ established at the third hearing that Plaintiff had amended his alleged onset date to March 1, 2009. R. 572.

In a twelve-page decision dated July 20, 2017, the ALJ determined that Plaintiff was not disabled for Title II purposes between March 1, 2009, and June 30, 2009, his date last insured, but that Plaintiff was disabled for Title XVI purposes beginning on August 27, 2009. R. 545, 554. The ALJ's decision followed the five-step sequential process for determining disability prescribed by the Social Security Administration (SSA). R. 545–47. At step one, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since his March 1, 2009 alleged onset date because the earnings from his work activities remained sufficiently low. R. 547. At step two, the ALJ concluded that Plaintiff has two severe impairments: left below-the-knee amputation and dysthymic disorder.

*Id.* At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* With regard to Plaintiff's physical impairment, the ALJ considered listing 1.05B (amputation). *Id.* With regard to his mental impairment, the ALJ determined that Plaintiff did not have a sufficient combination of marked impairments and repeated episodes of decompensation to satisfy the "paragraph B" criteria for any mental impairment listing. R. 548. Nor did the evidence support the existence of any listing's "paragraph C" criteria. *Id.*

The ALJ next concluded that Plaintiff had the following RFC:

> For the period from March 1, 2009, through February 26, 2015, the claimant had the residual functional capacity to lift twenty pounds occasionally and ten pounds frequently; stand and walk for two hours and sit for six hours in an eight hour workday; with no more than occasional pushing or pulling with the left lower extremity, balancing, stooping, kneeling, crouching, or crawling; no climbing, fast paced work, or daily quotas; and must avoid concentrated exposure to vibration to the left lower extremity.

R. 549. The ALJ then conducted a three-page discussion of Plaintiff's medical records and assigned weight to the various medical source opinions. R. 549–52. At step four, the ALJ determined that Plaintiff's RFC precludes him from performing any of his past relevant work. R. 552.

At step five, the ALJ bifurcated his analysis, assessing Plaintiff's capabilities both before and after August 27, 2009—his fiftieth birthday. First, the ALJ found that before August 27, 2009, Plaintiff was a "younger individual" (between the ages of 45 and 49) within the meaning of 20 C.F.R. §§ 404.1563 and 416.963. After he turned fifty, Plaintiff became under the regulations an "individual closely approaching advanced age." R. 552. The ALJ then proceeded to evaluate Plaintiff pursuant to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, concluding that based on Plaintiff's age, education, work experience, and RFC, as well as testimony by the VE, there

4

were jobs that existed in significant numbers in the national economy that he could have performed prior to August 27, 2009. Once Plaintiff reached age fifty and became a person approaching advanced age on August 27, 2009, however, the analysis changed. At that point, the ALJ noted that given Plaintiff's education, work experience, and RFC, Medical-Vocational Rule 201.14 directed a finding of disability.

The ALJ considered whether "a non-mechanical grid application" was warranted for the period prior to Plaintiff turning fifty, since his alleged onset date was less than six months from his 50th birthday. The ALJ declined to deviate from plaintiff's chronological age, however, explaining:

> Notably, the claimant and his representative cite no relevant factors that would warrant a non-mechanical grid application and the claimant being over five months away from his 50th birthday does not constitute being a "few months." Markedly, counsel cites no case law that found five plus months away from his next birthday as qualifying as a "few months" away (Exhibit 41E-2). He also fails to cite any case law where the date last insured is intervening, changing how a "few months" is calculated. Thus, the undersigned finds the claimant was a younger individual prior to August 27, 2009.

R. 552. The ALJ therefore found that Plaintiff was not disabled prior to August 27, 2009, but became disabled on that date and remained so through the date of the ALJ's decision. R. 554. Thereafter, Plaintiff filed his action for review in this court on September 26, 2017. ECF No. 1.

## LEGAL STANDARD

The statute authorizing judicial review of decisions of the Commissioner of Social Security states that the findings of the Commissioner "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is "such relevant evidence as a reasonable mind could accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (quoting *Richardson*

*v. Perales*, 404 U.S. 389, 401 (1971)).  Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn.  *Jelinek*, 662 F.3d at 811.  The ALJ must provide a "logical bridge" between the evidence and his conclusion.  *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination.  Failure to do so, unless the error is harmless, requires reversal.  *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006).  In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility.  *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998).  Finally, judicial review is limited to the rationales offered by the ALJ.  *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## ANALYSIS

Plaintiff raises only a single argument for reversing ALJ Toal's decision.  He claims that the ALJ committed an error of law by failing to evaluate and consider the application of Rule 201.12 of the Medical-Vocational Guidelines, 20 C.F.R. Chapter 404, Subpart P, Appendix 2.  Instead, Plaintiff contends that the ALJ mechanically applied 20 C.F.R. § 404.1563 in treating him as a younger person prior to his fiftieth birthday, even though the regulation permitted the ALJ to consider him a person closely approaching advanced age.  Had the ALJ found him to be a person closely approaching advanced age prior to his fiftieth birthday, Plaintiff would have been deemed disabled by application of the Medical-Vocational Guidelines.  Plaintiff argues that the ALJ was required to articulate findings and support for his decision not to place him in the older age category.

6

The ALJ's failure to do so and his mechanical application of the regulation, Plaintiff contends, requires reversal.

Under 20 C.F.R. § 404.1563(a), an ALJ deciding whether an individual is disabled will consider the person's age in conjunction with the person's RFC, education, and work experience. The SSA also "consider[s] advancing age to be an increasingly limiting factor in the person's ability to make . . . an adjustment" to other work. *Id.* To account for the increasing significance of age, the SSA uses three categories: "younger person" (below age 50); "person closely approaching advanced age" (age 50–54); and "person of advanced age" (age 55 or older). *Id.* § 404.1563(c)–(e). Whereas, for a younger person, the SSA "generally [does] not consider that [the person's] age will seriously affect [his] ability to adjust to other work," when a person is closely approaching advanced age, the SSA "will consider that [the person's] age along with [his] work experience may seriously affect [his] ability to adjust to other work." *Id.* § 404.1563(c)–(d). The regulation also provides, however, that the SSA "will not apply the age categories mechanically in a borderline situation." *Id.* § 404.1563(b). If a person is "*within a few days to a few months* of reaching an older age category, and using the older age category would result in a determination or decision that [the person is] disabled, [the SSA] will *consider* whether to use the older age category after evaluating the overall impact of all the factors" of the case. *Id.* (emphasis added).

As this case demonstrates, the age category in which a claimant finds himself can be crucial. Once Plaintiff attained age fifty and was considered "a person closely approaching advanced age," Rule 201.14 of the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, directed a finding of disabled given his education, work experience, and RFC. But as a "younger person," the rule did not apply to him prior to August 27, 2009. Despite the fact that his

chronological age prior to August 27, 2009, placed him in the younger person category, Plaintiff contends that the ALJ erred in failing to provide an explanation as to why he did not deviate from the rule and place him in the older age category. Plaintiff argues that had the ALJ properly assessed whether his circumstances qualified as a borderline situation, then he could have qualified as disabled under Rule 201.12 or 201.14 of the Medical-Vocational Guidelines as of his alleged onset date of March 1, 2009, or at least prior to his last insured date of June 30, 2009.

To be sure, the lines drawn between the various age categories are somewhat arbitrary, but this is by necessity. *Daniels v. Apfel*, 154 F.3d 1129, 1132 (10th Cir. 1998). The age categories, used in conjunction with the Medical-Vocational Guidelines, are essential tools for an already overburdened agency to adjudicate the millions of disability claims filed each year. *Heckler v. Campbell*, 461 U.S. 458, 467–68 (1983); *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). Importantly, the regulations provide a means of softening the edges of the categories so as to alleviate some of their arbitrariness with the promise that the Agency "will not apply these age categories mechanically in a borderline situation." 20 C.F.R. § 404.1563(a). Plaintiff alleges that the Commissioner's decision is flawed because the ALJ failed to make specific findings to support his decision not to place him in the older age category.

The Hearings, Appeals and Litigation Law Manual of the Social Security Administration (HALLEX) provides "guiding principles, procedural guidance and information" to adjudicators and staff of the Office of Hearings and Appeals. HALLEX I-1-0-1, https://www.ssa.gov/OP_Home/hallex/I-01/I-1-0-1.html (last visited Sept. 28, 2018). HALLEX I-2-2-42 sets out the principles that ALJs are to apply in applying 20 C.F.R. § 404.1563 in borderline

age situations.  HALLEX I-2-2-42, https://www.ssa.gov/OP_Home/hallex/I-02/I-2-2-42.html (last visited Sept. 28, 2018).  HALLEX I-2-2-42 sets out a two-part test to identify a borderline situation:

- Is the claimant's age within a few days or a few months of the next higher age category?

- Will the higher age category result in a decision of "disabled" instead of "not disabled"?

If the answer to one or both parts of the test is "no," a borderline age situation either does not exist or would not affect the outcome of the decision.  The ALJ will then use the claimant's chronological age.

If the answer to both parts of the test is "yes," a borderline situation exists, and the ALJ must decide whether it is more appropriate to use the claimant's chronological age or the higher age category.

*Id.*  To decide that first part of the test, the ALJ is to assess whether the claimant will reach the next higher age category within a few months or a few days after, as relevant here, the date last insured.  *Id.*  "Generally, SSA considers a few days or a few months to mean a period not to exceed six months."  *Id.*

Given this guidance, Plaintiff was in a "borderline age situation" within the meaning of 20 C.F.R. § 404.1563.  His date last insured (June 30, 2009) was less than two months from his fiftieth birthday (August 27, 2009).  Plaintiff therefore met the first part of the test.  He also met the second part since the higher age category would have resulted in a decision of disabled, instead of not disabled, for the period before his fiftieth birthday.  To the extent the ALJ suggested that the Plaintiff was not "within a few months" of reaching the higher age category as of his alleged onset date or his date last insured, this was error.  But by itself, this error does not require reversal.

In order for Plaintiff to have been placed in the higher age category, it was not enough for him to simply be in a borderline situation.  The HALLEX provides: "ALJs will not use the higher age

category automatically in a borderline age situation. ALJs will consider whether to use the higher age category after evaluating the overall impact of all the factors on the claimant's ability to adjust to doing other work (e.g., residual functional capacity combined with age, education, and work experience as explained in 20 CFR 404.1563, 416.963, and Part 404, Subpart P, Appendix 2)." *Id.*

The Appeals Council Interpretation of the regulations provides a further description of the factors to be considered when determining whether to use a higher age than a claimant's chronological age when applying the Medical-Vocational Guidelines. HALLEX II-5-3-2, https://www.ssa.gov/OP_Home/hallex/II-05/II-5-3-2.html (last visited Sept. 28, 2018). In general, the factors to be considered are "additional vocational adversity(ies)." *Id.* By way of examples, the HALLEX explains:

> One finds additional vocational adversity(ies) if some adjudicative factor(s) is relatively more adverse when considered in terms of that factor's stated criteria, or when there is an additional element(s) which has adverse vocational implications. Examples of these additional vocational adversities are the presence of an additional impairment(s) which infringes upon—without substantially narrowing—a claimant's remaining occupational base; or the claimant may be barely literate in English, have only a marginal ability to communicate in English, or have a history of work experience in an unskilled job(s) in one isolated industry or work setting. (An isolated industry would be such as fishing or forestry.) Other adverse circumstances in individual cases may justify using the higher age category.

*Id.* "Absent a showing of additional adversity(ies) justifying use of the higher age category," the HALLEX directs the adjudicator to "use the claimant's chronological age — even when the time period is only a few days." *Id.* Finally, the HALLEX notes, "[t]he adjudicator need not explain his or her use of the claimant's chronological age." *Id.*

In this case, I am satisfied that the ALJ complied with § 404.1563. Although the ALJ may have erred in questioning whether Plaintiff was "within a few months," as the Agency understands "few months," from reaching a higher age category for determining his eligibility for DIB, the ALJ

also found no relevant factors that would warrant a non-mechanical grid application. Indeed, the ALJ expressly noted "the claimant and his representative cite no relevant factors that would warrant a non-mechanical grid application." R. 552. Even now on judicial review, Plaintiff offers no reason why it was improper to use his actual chronological age in reaching the decision in his case. The VE testified that there were over 164,000 jobs in the national economy a person of Plaintiff's age, education and work experience, and having his RFC, could perform, including bookkeeping, order clerk, and office clerk. Plaintiff does not challenge this finding. Instead, he contends that he should have been given the benefit of the administrative rule that holds a person fifty years old with only a high school education who is limited to sedentary work without transferable skills is deemed disabled. Yet, he offers no reason why his actual age was not a realistic indicator of his ability to adjust to other work. The regulation does not say that the ALJ must place a claimant in a higher age category because he will benefit from it. To the contrary, the HALLEX explicitly notes: "If using the claimant's chronological age will result in a favorable decision, an administrative law judge (ALJ) will not use the higher age category solely because it will result in a more favorable onset date, determination, or decision for the claimant." HALLEX I-2-2-42, https://www.ssa.gov/OP_Home/hallex/I-02/I-2-2-42.html (last visited Sept. 28, 2018). Yet, that appears to be the only reason Plaintiff has offered as to why he should have been treated as a person closely approaching advanced age. That is not enough.

As the parties acknowledge, the Seventh Circuit has not addressed in any detail the application of 20 C.F.R. § 404.1563 to borderline situations. Several other circuits have, however. In *Bowie v. Commissioner of Social Security*, the Sixth Circuit held that although ALJs must not apply the age categories mechanically and must "consider whether use of an older age category would be appropriate in a borderline case, nothing in this language obligates an ALJ to address a

claimant's borderline age situation in his opinion or explain his thought process in arriving at a particular age-category determination." 539 F.3d 395, 399 (6th Cir. 2008). Quoting the HALLEX, the court explained "[a]bsent a showing of additional adversity(ies) justifying use of the higher age category, the adjudicator will use the claimant's chronological age—even when the time period is only a few days. The adjudicator need not explain his or her use of the claimant's chronological age." *Id.* at 400 (quoting HALLEX II-5-3-2).

Likewise, in *Lockwood v. Commissioner of Social Security*, the Ninth Circuit held that an ALJ satisfied the requirement that she consider whether to use the older age category when the ALJ mentioned in her decision the claimant's date of birth, found that he was 54 years old and thus a person closely approaching advanced age on the date of the ALJ's decision, and cited 20 C.F.R. § 404.1563, which prohibited her from applying the age categories mechanically in a borderline situation. 616 F.3d 1068, 1071–72 (9th Cir. 2010). The court was "satisfied that the ALJ did not apply the age categories mechanically because the ALJ evaluated the overall impact of all the factors of Lockwood's case when the ALJ relied on the testimony of a vocational expert before she found Lockwood was not disabled." *Id.* at 1072 (internal quotations and brackets omitted).

The Third, Eighth and Tenth Circuits, on the other hand, have held that some showing that the ALJ at least considered a non-mechanical grid application is required in order to comply with 20 C.F.R. § 404.1563. *See Kane v. Heckler*, 776 F.2d 1130, 1133 (3d Cir. 1985); *Phillips v. Astrue*, 671 F.3d 699, 706 (8th Cir. 2012); and *Daniels*, 154 F.3d at 1132–36. In *Phillips*, for example, the Eighth Circuit ultimately found the reasoning of the Third and Tenth Circuits more persuasive, concluding that "detailed findings in borderline situations are not necessary" but, because "it is [the] court's job to review whether substantial evidence exists to support the Commissioner's decision," the court "simply cannot complete this review without some showing as to the Commissioner's

consideration of applying the higher age category, which he indisputably is required to do." 671 F.3d at 706. But even these circuits do not require detailed findings. "Indeed, a mere statement by the Commissioner that he considered the borderline situation would likely suffice." *Id.* at 706 (citing *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x. 521, 527 (6th Cir. 2006) ("The ALJ . . . determined that 'it is not appropriate to consider the claimant to be an individual of advanced age on her date last insured for benefits.'")).

Even under the more stringent standard of the Third, Eighth and Tenth Circuits, the ALJ properly complied with 20 C.F.R. § 404.1563. Unlike *Bowie* and *Lockwood*, the ALJ in this case, expressly considered whether a non-mechanical grid application under § 404.1563 was appropriate and found no factors warranting it. R. 552. The claimant's chronological age is the default position under the regulation. If no "additional vocational adversity(ies)" required to justify using a higher age category are found, the claimant's actual age must be used. Plaintiff offers no argument that substantial evidence does not support the ALJ's finding that no such factors were shown. As the Commissioner's brief points out, substantial evidence supports the ALJ's finding that a higher age category was not appropriate. Def.'s Mem. In Support of Comm'r Decision, ECF No. 22 at 6–7. Under these circumstances, the Commissioner's decision must be affirmed.

## CONCLUSION

For the above reasons, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** this __28th__ day of September, 2018.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court